**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling**

**THE HOMER LAUGHLIN CHINA COMPANY,**

**Plaintiff,**

**v.**

**Civil Action No.: 5:14-cv-13**
**(BAILEY)**

**CONTINENTAL CASUALTY COMPANY** and
**NATIONAL FIRE INSURANCE COMPANY**
**OF HARTFORD,**

**Defendants.**

**ORDER GRANTING MOTION TO DISMISS**

## I. Introduction

Pending before this Court is Defendants Continental Casualty Company's and National Fire Insurance Company of Hartford's Motion to Dismiss Complaint [Doc. 11]. The Motion has been fully briefed and is ripe for decision.

This is an action for breach of contract and breach of the duty of good faith arising out of the failure of defendants Continental Casualty Company ("Continental") and National Fire Insurance Company of Hartford ("National") to fulfill their obligations under two stop gap liability policies issued to plaintiff Homer Laughlin China Company ("HLC") for an underlying asbestos claim filed by one of HLC's former employees.

## II. Factual and Procedural History

### The Underlying Case

The pertinent factual allegations of the Complaint [Doc. 1] include:

1. Patricia D. Little was employed by HLC from approximately 1968 until 2001;

2. In June 2012, HLC was named as a defendant in a lawsuit styled ***Patricia D. Little and Kenneth P. Little, her husband, v. A.O. Smith Corp., et al.***, Civil Action No. 12-C-865, in the Circuit Court of Kanawha County, West Virginia;

3. Patricia Little ("Mrs. Little") alleged injury arising from her employment at HLC from alleged exposure to asbestos-containing products allegedly installed or used by HLC, and many years after such alleged exposure, and many years after she terminated employment with HLC, she was diagnosed with asbestos-related injuries or disease;

4. On February 20, 2013, pursuant to Court ordered settlement proceedings, HLC settled Mrs. Little's claim against it;

5. HLC incurred in excess of one hundred thousand dollars in defense and indemnity costs for the Asbestos Claim;

6. The injuries for which HLC is allegedly responsible as asserted in the Asbestos Claim are alleged to have occurred during the policy periods of the stop gap policies issued to HLC by the defendants in the instant action; and

7. HLC provided notice of the Asbestos Claim to the defendants and made demand for payment of the settlement amount and attorney's fees it incurred, which defendants refused based on certain exclusionary language contained in the policies.

## The Policies

The relevant language of the two policies at issue is as follows.

The Continental Stop Gap Policy for years 1984 to 1987 provides:

> This insurance applies only to injury within the policy territory (1) by accident occurring during the policy period or (2) by sickness or disease caused or aggravated by exposure of which the last day of the last exposure, in the employment of the insured, to conditions causing the sickness or disease occurs during the policy period.

[Doc. 1-1, § IV].

The National Stop Gap Policy for years 1988 to 1991 provides:

> This insurance applies only to "bodily injury" occurring within the policy territory and caused by (1) an accident occurring during the policy period; or (2) sickness or disease caused or aggravated by exposure to conditions in the employment of the insured. The last day of the last exposure to such conditions must occur during the policy period.

[Doc. 1-2, § I.1(a)].

## III. 12(b)(6) Motion to Dismiss Standard

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is *plausible* on its face.' ***Bell Atl. Corp. v. Twombly***, 127 S.Ct. 1955, 1974 (2007) (emphasis added)." ***Giarratano v. Johnson***, 521 F.3d 298, 302 (4th Cir. 2008). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiffs, and must view the allegations in a light most favorable to the plaintiffs. ***Edwards v. City of Goldsboro****,* 178 F.3d 231, 243-44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations

contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. ***Anheuser-Busch, Inc. v. Schmoke***, 63 F.3d 1305, 1312 (4th Cir. 1995). In ***Twombly***, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," ***id***. at 1964-65, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." ***Id***. at 1974.

## IV. Choice of Law

In diversity jurisdiction cases, the choice of law rules of the forum state must be applied. ***Klaxon Co. v. Stentor Elec. Mfg. Co.***, 313 U.S. 487, 496 (1941). When determining rights under a contract, West Virginia follows the rule of *lex loci contractus*: the law of the state where a contract is made and is to be performed governs the rights of the parties. ***Poffenbarger v. New York Life Ins. Co.***, 277 F.Supp. 726, 730 (S.D. W.Va. 1967). The general rule with regard to choice of law in contract cases is stated in Syllabus Point 2 of ***General Electric Co. v. Keyser***, 166 W.Va. 456, 275 S.E.2d 289 (1981):

> "'The law of the state in which a contract is made and to be performed governs the construction of a contract when it is involved in litigation in the courts of this state.' Syl. Pt. 1 (in part) ***Michigan Ntnl. Bank v. Mattingly***, 158 W.Va. 621, 212 S.E.2d 754 (1975)."

The Complaint states that the subject insurance policies were delivered to the plaintiff and the occurrences which allegedly gave rise to the coverage under the policies took place within the State of West Virginia. Accordingly, the laws of West Virginia will

govern.

**<u>V.</u>** **<u>Applicable Law</u>**

1. "'Language in an insurance policy should be given its plain, ordinary meaning.' Syllabus Point 1, ***Soliva v. Shand, Morahan & Co., Inc.**,* 176 W.Va. 430, 345 S.E.2d 33 (1986), *overruled, in part, on other grounds by* **National Mut. Ins. Co. v. *McMahon & Sons**,* 177 W.Va. 734, 356 S.E.2d 488 (1987)." Syllabus Point 1, ***Mylan Labs Inc. v. Amer. Motorists Ins. Co.***, 226 W.Va. 307, 700 S.E.2d 518 (2010); ***Nationwide Prop. & Cas. v. Comer***, 559 F.Supp.2d 685, 690 (S.D. W.Va. 2008).

2. "'Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.' Syllabus, ***Keffer v. Prudential Ins. Co.**,* 153 W.Va. 813, 172 S.E.2d 714 (1970)." Syllabus Point 2, ***Mylan Labs Inc.***; ***Comer***, 559 F.Supp.2d at 690.

3. "'Whenever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous.' Syllabus Point 1, ***Prete v. Merchants Property Ins. Co.**,* 159 W.Va. 508, 223 S.E.2d 441 (1976)." Syllabus Point 3, ***Mylan Labs Inc. v. Amer. Motorists Ins. Co.***, 226 W.Va. 307, 700 S.E.2d 518 (2010).

4. "'The mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court.' Syllabus Point 1, ***Berkeley Co. Pub. Serv. v. Vitro Corp.**,* 152 W.Va. 252, 162 S.E.2d 189 (1968)." Syllabus Point 4, ***Mylan Labs Inc.***

5. "'It is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured.' Syllabus Point 4, ***National Mut. Ins. Co. v. McMahon & Sons**,* 177 W.Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by* ***Potesta v. U.S. Fidelity & Guaranty Co.**,* 202 W.Va. 308, 504 S.E.2d 135 (1998)." Syllabus Point 5, ***Mylan Labs Inc.***; ***Comer***, 559 F.Supp.2d at 690.

6. "'[I]ncluded in the consideration of whether the insurer has a duty to defend is whether the allegations in the complaint ... are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policies.' Syllabus Point 3, in part, ***Bruceton Bank v. U.S. Fid. and Guar. Ins.**,* 199 W.Va. 548, 486 S.E.2d 19 (1997)." Syllabus Point 6, ***Mylan Labs Inc.***; ***Comer***, 559 F.Supp.2d at 691.

## VI. Discussion

At the outset, this Court finds that the subject provisions in these insurance policies are clear and unambiguous. As such, this Court will not attempt to construe or interpret the same, but will give full effect to the plain meaning intended. *See* ***Keffer v. Prudential Ins. Co.***, 153 W.Va. 813, 172 S.E.2d 714. Such provisions would exclude coverage for Mrs. Little's asbestos-related sickness or disease caused or aggravated by exposure to asbestos while in the employ of HLC if the last day of the last exposure to the asbestos occurred outside the subject policy periods. The Complaint [Doc. 1] does not allege that the last day of the last exposure occurred during either of the two subject policy periods.

Rather, the plaintiff states that the exclusionary language should not be given effect because determining the last date of exposure "is an impossible condition to meet when

the medical profession cannot pinpoint exactly which exposure caused or aggravated the sickness." [Doc. 16 at 4]. Thus, the plaintiff argues that such would "leave[] HLC without the benefit of the stop gap insurance it thought it was purchasing." Id. Instead, HLC asks this Court to adopt the "continuous trigger theory," which imposes a coverage obligation on all insurance policies in effect during the entire process of injury or damage. *See* ***Keene Corp. v. Ins. Co. of North America***, 667 F.2d 1034, 1042-47 (D.C. Cir. 1981), *cert. den.*, 455 U.S. 1007 (1982). The policy language in the cases plaintiff cites, however, do not include this crucial "last day of the last exposure" language that is contained in the policies in this case. Thus, if this Court determines the subject exclusions are proper, the inquiry ends.

The determination of proper coverage, or lack thereof, is a question of law properly before this Court. *See* ***Tennant v. Smallwood***, 211 W. Va. 703, 568 S.E.2d 10 (2002). "West Virginia jurisprudence imposes a duty to make exclusionary language conspicuous, plain, and clear, and further imposes a duty to bring such exclusions to the attention of the insured." ***Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.***, 177 W.Va. 734, 356 S.E.2d 488 (1987). This Court will examine the two policies guided by these principles.

A. The National Fire Insurance Company of Hartford Policy

The National Policy's exclusionary language is valid for several reasons. Other than being unambiguous, this exclusion is conspicuous, plain, and clear; its placement in the "Coverages" section of the Policy is appropriate; and it was brought to the attention of the insured by virtue of the cautionary language at the top of the page.

The National Stop Gap Policy for years 1988 to 1991 provides, in pertinent part:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

STOP GAP LIABILITY COVERAGE PART

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

. . .

SECTION I – COVERAGES

1. INSURING AGREEMENT – Bodily Injury

> a. . . . This insurance applies only to "bodily injury" occurring within the policy territory and caused by:
>
> > (1) an accident occurring during the policy period; or
> >
> > (2) sickness or disease caused or aggravated by exposure to conditions in the employment of the insured. The last day of the last exposure to such conditions must occur during the policy period.

[Doc. 1-2].

This Court has thoroughly reviewed the policy and finds there exists no misconception, deception, or intentional concealment of the subject exclusion. Neither is the endorsement page buried within the policy or contained in some "fine print," nor would it require of the insured a "painstaking study of the policy" to uncover it. *See* ***Luikart***, 216 W. Va. at 755, 613 S.E.2d at 903. Rather, this Court finds that the subject exclusion is well within the unambiguous, four corners of the Policy.

Further, this Court finds defendant National sufficiently disclosed the exclusion to HLC. The cautionary language in the National Policy regarding coverage is strikingly similar to that in ***Luikart***. In concluding the insurer sufficiently disclosed the exclusions, the ***Luikart*** Court noted that:

> [T]he policy's coverage section clearly stated that it was subject to various exclusions. The portion of the policy . . . which contains the relevant exclusionary language, cautions in its first sentence that "[v]arious provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered."

216 W. Va. at 754.

Having reviewed the above, this Court finds that the exclusion shall apply. Accordingly, because plaintiff HLC does not allege that Mrs. Little's last day of last exposure to asbestos occurred during this policy period, defendant National is not responsible to indemnify HLC for the settlement in the underlying lawsuit styled ***Patricia D. Little and Kenneth P. Little, her husband, v. A.O. Smith Corp., et al.***, Civil Action No. 12-C-865, in the Circuit Court of Kanawha County, West Virginia.

B. The Continental Casualty Company Policy

The Continental Stop Gap Policy for years 1984 to 1987 provides, in pertinent part:

IV. POLICY PERIOD; TERRITORY

> This insurance applies only to injury within the policy territory (1) by accident occurring during the policy period or (2) by sickness or disease caused or aggravated by exposure of which the last day of the last exposure, in the employment of the insured, to conditions causing the sickness or disease occurs during the policy period.

[Doc. 1-1, § IV].

The plaintiff urges this Court to strictly construe the above language because it is not included in the "Coverage" section or the "Exclusions" section, but rather is contained in Section IV, "Policy Period; Territory." [Doc. 16 at 3-4]. The Court notes that the plaintiff

does not allege it did not read the Policy or overlooked the pertinent language; nevertheless, as the language is not contained in those sections, this Court has "scrutinized more carefully" this exclusionary language. ***Erie Ins. Prop. & Cas. Co. v. Stage Show Pizza, JTS, Inc.***, 210 W.Va. 63, 67, 553 S.E.2d 257, 261 (2001).

In this case, the doctrine of "reasonable expectations" argument is unavailing. This doctrine is the exception to the general rule, allowing courts "in limited circumstances" to nullify policy terms "even in cases where the policy language is clear and unambiguous." ***Luikart v. Valley Brook Concrete & Supply, Inc.***, 216 W. Va. 748, 755, 613 S.E.2d 896, 903 (2005). Such application has relaxed the rule that a party to a contract has a duty to read the instrument by honoring objectively reasonable expectations "even though painstaking study of the policy provisions would have negated expectations." ***McMahon***, 177 W.Va. at 741 n. 6. As the high court recently acknowledged, however, in ***American States Ins. Co. v. Surbaugh***, 231 W.Va. 288, 299, 745 S.E.2d 179, 190 (2013):

> The law of this State is clear in holding that "[a] party to a contract has a duty to read the instrument." Syl. Pt. 5, ***Soliva v. Shand, Morahan & Co., Inc.***, 176 W.Va. 430, 345 S.E.2d 33 (1986). As pointed out by a California appellate court:
>
> > Failing to read a policy . . . is not sufficient reason to hold a clear and conspicuous policy provision unenforceable. To hold otherwise would turn both contract and insurance law on its head. Insurers are not required to sit beside a policy holder and force them to read (and ask if they understand) every

provision in an insurance policy. ***Mission Viejo Emergency Med. Assocs. v. Beta Healthcare Grp.***, 197 Cal.App.4th 1146 (2011).

The Court further clarified in ***American States*** that "[a]lthough dicta appears in footnote 6 of ***McMahon*** that might suggest an insured does not have a duty to read a policy, the opinion does not stand for such an abhorrent proposition." 231 W.Va. at 299 n. 14.

While the plaintiff in this case is correct that the subject exclusion is not listed in the section entitled "Exclusions," the exclusion *is* clearly stated and closely placed on the same page directly next to it. Indeed, the entirety of the "Coverage A – Bodily Injury Liability" endorsement is fully contained on approximately one-half of a page. Although HLC does not allege that it did not read the Policy language, it is clear that even the most cursory read of this half-page document would reveal this unambiguous, conspicuous, exclusionary language.

Further, in reviewing the Policy, "[courts] must . . . consider the conspicuity of the exclusionary language. The term 'conspicuous' is defined as 'clearly visible or obvious . . . [w]hether a printed clause is conspicuous as a matter of law . . . depends on the size and style of the typeface.' *Black's Law Dictionary* 329 (8th ed. 2004)." ***Luikart***, 216 W. Va. at 753, 613 S.E.2d at 901.

This Court has reviewed the policy and finds there exists no misconception, deception, or intentional concealment of the subject exclusion. There is nothing remarkable about the size and style of the typeface. Neither is the endorsement page buried within the

policy or contained in some “fine print,” nor would it require of the insured a “painstaking study of the policy” to uncover it. *See* ***Luikart***, 216 W. Va. at 755, 613 S.E.2d at 903. Rather, this Court finds that the subject exclusion is well within the unambiguous, four corners of the Policy. Therefore, this Court holds that the exclusion shall apply.

Accordingly, because plaintiff HLC does not allege that Mrs. Little’s last day of last exposure to asbestos occurred during this policy period, defendant Continental Casualty Company is not responsible to indemnify HLC for the settlement in the underlying lawsuit styled ***Patricia D. Little and Kenneth P. Little, her husband, v. A.O. Smith Corp., et al.***, Civil Action No. 12-C-865, in the Circuit Court of Kanawha County, West Virginia.

As a final matter, having found no breach of contract, HLC’s claim for breach of the duty of good faith and fair dealing must also fail. *See* ***Kesling v. Countrywide Home Loans, Inc.***, 2011 WL 227637 at *4 (S.D. W. Va. 2011)(no independent claim for breach of the duty of fair dealing where no duty to perform existed under the contract).

## Conclusion

For the reasons stated above, Defendants Continental Casualty Company’s and National Fire Insurance Company of Hartford’s Motion to Dismiss Complaint **[Doc. 11]** is **GRANTED**. Accordingly, this civil action is hereby **DISMISSED** and **STRICKEN** from the active docket of this Court. The Clerk is **DIRECTED** to enter judgment in favor of the defendants.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record herein.

**DATED:** June 27, 2014.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE